## SEABOARD AND ROANOKE RAILROAD COMPANY *et al.* *v.* CAUTHEN & TURNER.

1. Gross neglect, as defined by the Civil Code, § 2900, "is the want of that care which every man of common sense, how inattentive soever he may be, takes of his own property." A court in undertaking to give to a jury this definition, should not omit the words, "how inattentive soever he may be."
2. Where in a special contract for the transportation of live stock it is expressly stipulated that, "in case of accident to or delays of time from any cause whatever, the owner and shipper is to feed, water, and to take proper care of stock at his own expense," and that the owner or person in charge of the stock is to have "all proper facilities on trains and at stations for taking care of" the stock so shipped, he being, for this purpose, furnished free transportation and required to ride upon the train carrying the stock, there is no duty upon the railway company of feeding or watering the animals, and it can not, under such a contract, be held liable for any damages resulting from a failure on its part so to do.

Submitted March 1, — Decided April 29, 1902.

Action for damages. Before Judge Proffitt. City court of Elberton. June 13, 1901.

*Erwin & Brown* and *H. J. Brewer*, for plaintiff in error.
*Joseph N. Worley*, contra.

FISH, J. Cauthen & Turner brought an action against the Seaboard and Roanoke Railroad Company and the Raleigh and Gaston Railroad Company, to recover damages which the plaintiff alleged that he had sustained by reason of the delay of the defendants in the transportation of a car-load of cattle from Elberton, Ga., to Portsmouth, Va., and in consequence of want of proper care and attention to the cattle by defendants while in course of transportation. Upon the trial there was a verdict for the plaintiffs. Defendants' motion for a new trial being overruled, they excepted. The shipment was made under a written contract, a copy of which was attached to the petition. The portions of this contract material to this discussion were as follows: "Now, in consideration of

said railroads agreeing to transport the above-described live stock at the reduced rate of fifty-two dollars per car-load and a free passage to the owner or his agent on the train with the stock, the said owner and shipper do hereby assume (and release the said railroads from) all injury, loss, and damage or depreciation which the animals or either of them may suffer in consequence of either of them being weak, or escaping, or injuring themselves or each other, or in consequence of overloading, heat, suffocation, fright, viciousness, or of being injured by fire or the burning of any material while in possession of the companies, and from all other damages incidental to railroad transportation, which shall not have been caused by the fraud or gross negligence of said Railroad Companies. . . And it is further agreed, that, in a case of accident to or delays of time from any cause whatever, the owner and shipper is to feed, water, and to take proper care of stock at his own expense. And it is further agreed, that while the company's employees shall provide the owner or person in charge of the stock all proper facilities on trains and at stations for taking care of the same, the business of the company shall not be delayed by the detention of trains to unload and reload stock, or any cause whatever, but cars may be left at a station upon the request of the person in charge of the same, to be forwarded by next freight-train if he so directs. And it is further agreed, that the owners and shippers or his or their agents in charge of the stock shall ride upon the freight-train on which the stock is transported," etc.

1. One ground of the motion for a new trial alleged that the court erred in instructing the jury that " Gross negligence is the want of that care which every man of common sense takes of his own property." Gross neglect, as defined by the Civil Code, § 2900, " is the want of that care which every man of common sense, how inattentive soever he may be, takes of his own property." In undertaking to give this definition to the jury, the court should not have omitted the words, " how inattentive soever he may be."

2. It is clear from the terms of the contract of shipment, which we have quoted above, that the defendants were under no duty of feeding or watering the cattle, whether there were delays in their transportation or not, but such duty, in any event, was upon the owner or shipper. There was nothing in the contract imposing such duty upon the railroad companies, and, to put it beyond ques-

tion, it was expressly stipulated that, even "in case of accident or delays of time from any cause whatever, the owner and shipper is to feed, water, and to take proper care of" the cattle so shipped, he being, for this purpose, furnished free transportation and required to ride upon the train carrying the stock. See *Boaz* v. *Central Railroad Co.*, 87 *Ga.* 463; *Georgia Railroad & Banking Co.* v. *Reid*, 91 *Ga.* 377. See also *Susong* v. *Railroad Co.*, ante, 361. The charges of the court upon which error was assigned in the motion for a new trial were susceptible of the construction that it was the duty of the railroad companies, under the contract of shipment, to feed and water the cattle during ordinary transportation, where there was no accident or delay. In view of what we have said, these charges were erroneous, and the judgment of the court, in refusing to grant a new trial, is reversed.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*